UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL C. WALLER,

    Plaintiff,                            Civil Action No. 15-13305
                                          Honorable David M. Lawson
v.                                          Magistrate Judge David R. Grand

TIAVON MOORE-PATTON, RAMONA
VINCENT, QUANTA MILLEDGE-BENJAMIN,
MARIA ROSADA, CRINISHA HALL, ANGELA
CALLOWAY, AND ROBERT CAIN,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [61] AND TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [66]**

This is an employment discrimination case. In his amended complaint, Plaintiff Daniel Waller ("Waller"), a former teacher's aide at Jerry L. White School in Detroit, alleges that his employment with the Detroit Public Schools ("DPS") was terminated because of his age, religion, and sex, and in retaliation for complaints he voiced, in violation of both state and federal law. (Doc. #7).

Now pending before the Court are cross-motions for summary judgment filed by Waller and Defendants TiaVon Moore-Patton, Ramona Vincent, Quanta Milledge-Benjamin, Maria Rosada, Crinisha Hall, Angela Calloway, and Robert Cain (collectively "Defendants"), all of whom are or were employed by DPS at the time of the events in question. (Docs. #61, 66).

An Order of Reference was entered on September 25, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #5). The Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and therefore dispenses with oral argument pursuant to E.D. Mich. L.R. 7.1(f).

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**Doc. #61**) be **GRANTED** and Waller's Motion for Summary Judgment (**Doc. #66**) be **DENIED**.

**II.    REPORT**

   **A.     Background**

Waller, who was born in 1955, began his employment with DPS on or about August 30, 1993. (Doc. #61 at Ex. C, p. 7). At the time of the events at issue in this case, Waller was working as a Trainable Aide at Jerry L. White School. In his barebones amended complaint, Waller alleges in only the broadest terms that, between 2013 and 2014, he suffered discrimination because of his age, religion (Jehovah's Witness), and sex, and that he was retaliated against for certain unspecified "whistle blower" complaints. (Doc. #7). In their motion for summary judgment, Defendants deny that they discriminated or retaliated against Waller and assert that his employment was terminated on December 29, 2014, for legitimate, nondiscriminatory reasons – namely "violation of several work rules, unprofessional conduct, and insubordination." (Doc. #61 at 9).

   **B.     Standard of Review**

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir.

2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially

higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

**C. Analysis**

*1. Defendants' Motion for Summary Judgment Should be Granted*

As mentioned above, Waller claims that his employment at DPS was terminated because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq.*, and because of his religion and sex, in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §37.2101 *et seq.* Waller also alleges that his termination was retaliatory, in violation of one or more of these statutes. Defendants argue that summary judgment in their favor is appropriate on each of Waller's claims because he cannot establish a *prima facie* case of discrimination or retaliation and because, even if he could do so, Defendants have articulated legitimate, nondiscriminatory reasons for his termination, and Waller cannot show that these reasons were a pretext for illegal discrimination and/or retaliation. For the reasons set forth below, the Court agrees with Defendants.

      a.      Waller's Discrimination Claims

Title VII makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion [] or sex …." 42 U.S.C. §2000e-2(a)(1). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). And, the ELCRA prohibits discrimination in employment on the basis of, *inter alia*, religion, age, and sex. *See* M.C.L. §37.2102.

Courts have recognized that cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII and ADEA cases. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004); *Tilley v. Kalamazoo County Road Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015). A plaintiff may establish violations of these statutes through either direct or circumstantial evidence. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400-01 (6th Cir. 2009). Absent direct evidence,[1] such claims are subject to the burden-shifting analysis first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff

---

[1] "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful [discrimination] was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). In other words, direct evidence is a "manifestation of actual discriminatory intent by a decision maker, 'such as an explicit statement' that the employer was acting on the basis of a protected status." *Ivezaj v. Detroit Pub. Schs.*, 99 F. Supp. 3d 735, 748 (E.D. Mich. 2015) (quoting *Imwalle*, 515 F.3d at 544). In this case, the only "evidence" that even arguably needs to be evaluated against this standard is Waller's allegation that Milledge-Benjamin called him "senile." (Doc. #61 at Ex. C, p. 15). Accepting this allegation as true, it does not constitute direct evidence of age discrimination, as Milledge-Benjamin did not make the decision to terminate Waller's employment, and – even if she had – the Court would still need to infer discriminatory intent from this alleged comment. Thus, Waller's claims are more properly analyzed through consideration of the circumstantial evidence presented.

must first establish a *prima facie* case of discrimination. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). If the plaintiff does so, the defendant must then offer evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant offers a legitimate reason, then the plaintiff must identify evidence from which a reasonable jury could conclude that the "proffered reason was not its true reason, but merely a pretext for discrimination." *Id.* at 391-92.

Defendants first argue that Waller has failed to establish a *prima facie* case of age, sex, or religious discrimination. To state a *prima facie* case on a disparate treatment theory, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was discharged; (3) he was qualified for the position held; and (4) he was replaced by someone outside of the protected class. *See Tilley*, 777 F.3d at 308. In the alternative, the plaintiff can make out a *prima facie* case by showing, in addition to the first three elements, that a comparable person outside the protected class was treated more favorably. *See Jackson v. Int'l Fiber Corp.*, 395 F. App'x 275, 280 (6th Cir. 2010). As the Sixth Circuit has stated, the salient issue "is whether the plaintiff was singled out because of [his] membership in a protected class and treated less favorably than those outside of that class, not whether [he] was treated less favorably than someone's general standard of equitable treatment." *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 505 (6th Cir. 2010) (internal quotations omitted).

In this case, assuming that Waller satisfies the first three elements of a *prima facie* case, he has provided no evidence that he was replaced by someone outside of his protected classes (i.e., a woman, a non-Jehovah's Witness, or a younger individual). Nor has Waller pointed to an individual outside these protected classes who "engaged in the same or similar conduct" and was treated more favorably. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 818 (6th Cir.

2011). Indeed, Waller has come forward with no evidence that any individual who violated multiple work rules, and was both unprofessional and insubordinate, was not terminated. As such, the Court finds that Waller has not made out a *prima facie* case of age, sex, or religious discrimination.[2]

Moreover, even if Waller could establish a *prima facie* case of age, sex, and/or religious discrimination, Defendants have come forward with legitimate, nondiscriminatory reasons for terminating Waller's employment – namely, his "violation of several work rules, unprofessional conduct, and insubordination," including his "refusal to follow directives, failure to do his work, sleeping on the job, working for another employer during DPS hours, reporting personal and sensitive information about colleagues and students, and general insubordination." (Doc. #61 at 9, 16).

Defendants attach to their motion a copy of Waller's termination letter, dated December 29, 2014, and drafted by Lauri Washington, DPS' Executive Director.[3] (*Id.* at Ex. A). In her eleven-page letter, Washington detailed the reasons for Waller's termination, which took place after a formal disciplinary hearing (at which Waller had union representation). (*Id.*). Washington noted that Waller had been suspended for three days in May 2014 for similar conduct (violating work rules, unprofessional conduct, and insubordination) and had been warned at that time that "repeated violation would subject [him] to further disciplinary action, up

---

[2] Courts considering ADEA claims have allowed plaintiffs to satisfy the fourth element of a *prima facie* case by showing "circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). In this case, none of the evidence offered by Waller, which is discussed in greater detail below, *infra* at 9-10, supports an inference of age discrimination.

[3] Pursuant to Fed. R. Civ. P. 56(c)(1)(A), a party asserting that a fact cannot be genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations … or other materials." Waller does not challenge the authenticity of Washington's letter and admitted at his deposition that he received a copy from DPS.

to and including termination of [his] employment with [DPS]." (*Id.* at Ex. A, p. 7). Having reviewed the testimony (from five witnesses) and the 65 exhibits offered at the disciplinary hearing, Washington concluded that Waller's "behavior, conduct and attitude" did not improve after his three-day suspension, saying:

> You do not respect the teachers in charge of the classroom where you are assigned as a Trainable Aide. You do not respect the principal or the Academic Engagement Administrator. You did not heed the warning of the Hearing Officer or your union president from your May or October hearing because your behavior and conduct is still unprofessional and insubordinate. You refuse to follow directives or procedures as it relates to your job duties.

(*Id.* at Ex. A, p. 10). Thus, Washington concluded that the charges against Waller had been "substantiated," he had violated work rules, and he had been unprofessional and insubordinate, and she made the decision to terminate his employment.[4] (*Id.* at Ex. A, pp. 10-11).

Because Defendants articulated legitimate, nondiscriminatory reasons for terminating Waller's employment with DPS, the burden shifts to Waller to prove by a preponderance of the evidence that the articulated reasons were a pretext for discrimination. Waller may establish pretext by showing that the stated reasons (1) have no basis in fact, (2) were not the actual reasons for the action, or (3) are insufficient to explain the employer's action. *See White*, 533 F.3d at 393. However, even if Waller successfully proves that DPS' reasons are not worthy of credence, he must show not just that the reasons were pretextual, but that they were a pretext for illegal discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) ("a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason") (emphasis in original).

---

[4] Waller asserts that it was Moore-Patton, Vincent, and Calloway who "wrongfully with prejudice terminated" his employment. (Doc. #66 at 11). He offers no evidentiary support for this proposition, however.

When asked at his deposition what evidence he has that his termination was motivated by age, sex, or religious discrimination, Waller testified as follows:

- He allegedly was "the oldest person there that was terminated." (Doc. #61 at Ex. C, p. 14).

- Defendant Quanta Milledge-Benjamin allegedly called him "senile," and both TiaVon Moore-Patton (the former principal at Jerry L. White School) and Ramona Vincent (the assistant principal) failed to take action when he complained about this alleged comment.[5] (*Id.* at Ex. C, pp. 16-17).

- Waller alleges that Robert Cain, another (younger) teacher's aide, discriminated against him on the basis of his age by not being available for students approximately eight different times, which resulted in additional work for Waller. (*Id.* at Ex. C, pp. 23-24). Waller further alleges that because Cain was "unavailable all the time," Milledge-Benjamin discriminated against him by assigning him Cain's work. (*Id.* at Ex. C, p. 17).

- Waller alleges that "other people" were given lunch breaks and paid overtime, while he was not. (*Id.* at Ex. C, p. 16-17).

- Waller asserts that Maria Rosada and Crinisha Hall, both teacher's aides, discriminated against him on the basis of age and sex when they entered the boys' locker room unannounced. (*Id.* at Ex. C, pp. 18-20).

- Waller asserts that Angela Calloway, DPS' Assistant Director of Employee Relations, discriminated against him on the basis of age when she failed to mention at one or both of his disciplinary hearings that he claimed Milledge-Benjamin called him senile, that he claimed female staff members entered the boys' locker room unannounced, and that he claimed he (alone) had been forced to miss three lunch breaks. (*Id.* at Ex. C, pp. 21-22).

- Waller alleges that Moore-Patton discriminated against him on the basis of his religion (Jehovah's Witness) by directing Milledge-Benjamin to require him to accompany the student to whom he was assigned – on a one-on-one basis – to

---

[5] The Court has listened to and considered the audio recording submitted by Waller in which Milledge-Benjamin used the word "senile." (Waller's Electronic Submission at Ex. Y). This evidence, like the vast majority of the other audio and documentary evidence submitted by Waller, does nothing to prove his discrimination claims. Indeed, although Milledge-Benjamin apparently said "maybe you are senile," Waller responded by accusing Milledge-Benjamin of being "senile" too. More importantly, however, the tapes show that these comments were made in the midst of an argument between Waller and Milledge-Benjamin, during which Waller's behavior was in fact rude, disrespectful, and unprofessional, providing further factual support for the reasons articulated by Defendants for his discharge.

classroom holiday celebrations (for Easter, Christmas, and/or Halloween). (*Id.* at Ex. C, pp. 26-28). Waller also alleges that Milledge-Benjamin engaged in religious discrimination when she played "praise music" in the classroom. (*Id.* at Ex. C, pp. 37-38).

Having reviewed all of the "evidence" offered by Waller, the Court finds that he has not satisfied his burden of proving pretext.[6] Although not entirely clear, it appears that Waller is attempting to prove pretext by showing that the proffered reasons (i.e., work rule violations and unprofessional/insubordinate behavior) were not the reasons actually motivating the decision to terminate his employment. The problem for Waller, however, is that his evidence is wholly insufficient on that point.

As discussed above, the evidence establishes that it was Lauri Washington, DPS' Director of Employee Relations, who made the decision to terminate Waller's employment, and Waller has not attributed any discriminatory motivation to Washington. Thus, even assuming that the named Defendants made and/or took some or all of the comments or actions summarized above, they were not decision makers, and any illegal motivation on their part cannot be imputed to Washington, particularly where Waller has offered no evidence that Washington was aware of any of the alleged discriminatory actions/comments. *See, e.g., Ivezaj*, 99 F. Supp. 3d at 748 ("[T]he discriminatory or retaliatory animus of a coworker is not usually relevant to whether the employer violated Title VII, and the only relevant beliefs or motivations are those of the actual decisionmaker …."). Moreover, even assuming the truth of all of Waller's allegations – that Milledge-Benjamin called him "senile" and Moore-Patton and Vincent did nothing about it; that

---

[6] Shortly after he filed his motion for summary judgment, Waller filed a "Motion Requesting Permission to File Audio/Video Exhibits with Summary Judgment." (Doc. #67). On January 10, 2017, the Court held an informal telephonic conference with Waller and counsel for Defendants, during which it was agreed that Waller would be permitted to submit electronic copies of the audio/video recordings at issue to the Court. Waller has since provided a copy of those materials to the Court and Defendants, and the Court has reviewed and considered them. Accordingly, the Court will enter a separate order granting Waller's motion to file the audio/video exhibits.

Rosada and Hall entered the boys' locker room, which disturbed Waller; that Cain was less than diligent at all times; and that Calloway failed to mention any of these issues at the disciplinary hearings – Waller still has not shown that this purported discriminatory animus had any effect on the final termination decision.[7] *Id.* at 748-50. As such, summary judgment in Defendants' favor is warranted on Waller's discrimination claims.

b.      Waller's Retaliation Claim

Title VII, the ADEA, and the ELCRA all prohibit an employer from retaliating against an employee who has opposed an unlawful employment practice. *See* 42 U.S.C. §2000e-3(a); 29 U.S.C. §623(d); M.C.L. §37.2101(a). To establish a *prima* facie case of retaliation under any of these statutes, Waller must demonstrate that (1) he engaged in protected activity; (2) Defendants knew of his protected activity; (3) Defendants took adverse action against him; and (4) a causal connection existed between the protected activity and the adverse action. *See E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (Title VII); *Blizzard*, 698 F.3d at 288 (ADEA); *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 472 Mich. 263 (2005) (ELCRA). If Waller can establish a *prima facie* case, the burden of production shifts to Defendants to

---

[7] Again, it bears repeating that much of the evidence submitted to the Court by Waller in electronic form actually bolsters Defendants' stated reasons for his termination, as opposed to Waller's allegations of discrimination. For example, in his interactions with teachers, Waller is frequently disrespectful, argumentative, and antagonistic. (Waller's Electronic Submission at Ex. Y, JJ). Indeed, one recorded conversation in particular seems to sum up Waller's ongoing performance deficiencies. During that conversation, Peter Young (a teacher) was talking with Waller and Cain about a recent situation in which a special needs student had diarrhea, necessitating the cleanup of "fecal matter" in the classroom. Despite Young's attempt to explain to Waller the importance of teachers and aides functioning as a team, and his repeated statements that he too would clean up feces if necessary, Waller behaved confrontationally, maintaining that he was on his lunch hour when the accident occurred and demanding that Young "put it in writing" if he expected Waller to attend to a student other than the one to whom he was assigned one-on-one. (Waller's Electronic Submission at Ex. JJ). In other words, this and other evidence submitted by Waller belies his allegations of illegal discrimination, and supports the reasons articulated by Defendants for his discharge.

proffer a legitimate, nonretaliatory reason for their actions. *Id.* If Defendants do so, the burden of persuasion shifts back to Waller to show that the proffered reason was not the true reason for the employment decision, i.e., that the reason was a pretext for retaliation. *Id.* Ultimately, however, at least for the federal retaliation claims, Waller must establish but-for causation: "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *New Breed Logistics*, 783 F.3d at 1066.

As an initial matter, Waller has not made out a *prima facie* case of retaliation. With respect to the first element, it does appear that Waller engaged in protected activity when he lodged an internal complaint of "Employment Discrimination/Harassment" on March 10, 2014. (Doc. #66 at Ex. G). In this complaint, filed against Rosada, Hall, and Moore-Patton, Waller alleges that he was discriminated against on the basis of his age, sex, and marital status, and was subjected to sexual harassment, when Rosada and Hall entered the boys' locker room (more than six months earlier). (*Id.*). However, there is no indication that Washington – who made the decision to terminate Waller's employment with DPS – had any knowledge of this complaint (indeed, the complaint indicates on its face that it was made to Calloway, and, as discussed above, *supra* at 9, one of Waller's assertions is that Calloway never mentioned these allegations at his disciplinary hearings). (*Id.*). Moreover, Waller has come forward with no evidence of a causal connection between the filing of this complaint and his suspension and/or termination.[8]

---

[8] In an apparent effort to demonstrate a causal connection between his March 2014 complaint and his May 2014 suspension (and subsequent December 2014 termination), Waller asserts that, prior to filing this complaint, he had "never in his career with DPS, received an oral or written reprimand." (Doc. #66 at 11). While this might be true as a factual matter, Waller cannot establish a causal connection simply by showing that he filed the complaint at issue before the discipline was administered. *See, e.g., Powell-Kirby v. Spectrum Health*, 920 F. Supp. 2d 803, 807 (W.D. Mich. Jan. 30, 2013) ("While temporal proximity is an indicator of a causal connection, the Sixth Circuit has repeatedly held that temporal proximity, without other evidence of retaliatory conduct, is generally insufficient to establish the required causal connection for a

More importantly, however, even if Waller had established a *prima facie* case of retaliation, Defendants have offered legitimate, nonretaliatory reasons for his termination – namely, his violation of several work rules, unprofessional conduct, and insubordination – and as discussed above, *supra* at 9-10, Waller has come forward with no evidence that these proffered reasons were a pretext for illegal retaliation. For all of these reasons, summary judgment should be granted in favor of Defendants on Waller's retaliation claims.

### 2. *Waller's Motion for Summary Judgment Should be Denied*

Lastly, for all of the reasons stated above, summary judgment in Waller's favor should be denied. As set forth above, because Waller is the plaintiff in this case, to prevail on his summary judgment motion he must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for [him]." *Calderone*, 799 F.2d at 259. Here, where the evidence establishes that summary judgment in favor of Defendants is appropriate, it is equally clear that Waller's motion for summary judgment should be denied.

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**Doc. #61**) be **GRANTED** and Waller's Motion for Summary Judgment (**Doc. #66**) be **DENIED**.

Dated: January 18, 2017      s/David R. Grand
Ann Arbor, Michigan      DAVID R. GRAND
     United States Magistrate Judge

---

retaliation claim.") (citing cases). This is particularly true when Waller's termination occurred more than nine months after he filed his March 2014 complaint.

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 18, 2017.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager